IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CHANTELLA WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV16 |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY DUNNING, DOUGLAS, | ) | MEMORANDUM AND ORDER |
| COUNTY OF NEBRASKA, and | ) | |
| ROBERT HOUSTON, | ) | |
| | ) | |
| Defendants. | ) | |

This mater is before the court on the defendant's motion for summary judgment. Filing No. 26. Plaintiff filed her complaint alleging defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1983. Plaintiff filed her claims with the Equal Employment Opportunity Commission (EEOC) and received a right to sue letter. Defendant Douglas County is a political subdivision of the State of Nebraska and employed plaintiff as a correctional officer; Timothy Dunning served as the Sheriff of Douglas County and Director of Douglas County Department of Corrections from September 1997 to April 3, 2003; and Robert Houston received his appointment as director of Douglas County Department of Corrections in April 2003. The court has carefully reviewed the record, briefs, and the relevant case law and determines that summary judgment should be granted.

**FACTS**

Plaintiff is an African-American female, employed by defendant Douglas County as a correctional officer at all material times herein. On March 6, 2002, defendant promoted

1

plaintiff to Sergeant. Two white correctional officers, Walter Barbee and David Chamberlain, also received promotions to Sergeant positions thirty to sixty days prior to plaintiff. These two officers began serving a probationary period and were then disciplined for misconduct. Thereafter, they each began a new or extended 90-day probationary period. Plaintiff argues that the civil service policies did not permit a new probationary period but instead required demotion. These two officers kept their seniority dates. The plaintiff contends that, in the past, three African-American officers (one in 1995 and two in 1997) had been demoted for misconduct during the probationary period.

Twice a year correction officers bid for their shift preferences. Plaintiff bid for a specific shift, the B day shift. One of the white officers, Chamberlain, received the shift requested by the plaintiff. Shift requests are based on the seniority of the officers. Plaintiff argues that if defendants had not treated the white correctional officers more favorably than African-American officers, she would have had higher seniority and would have received her shift bid request. Filing No. 1. Defendants contend that plaintiff received her shift bid results in July 2003 and was assigned to the A shift. Ex. 2, ¶ 7. However, she did not have to work the A shift until October, 2003, because she was assigned to a Transition Team from July to October, and that was a day shift job. Defendants deny all allegations of discrimination.

During all material times, the terms and conditions of plaintiff's employment were covered by the provisions of the Douglas County Civil Service Personnel Policy Manual (hereinafter "Personnel Policy Manual"); an Agreement between Douglas County and the Fraternal Order of Police (FOP), Lodge No. 8, (July 1, 2000 to June 30, 2001), extended and effective until June 18, 2002; and an Agreement between Douglas County and the

FOP, Lodge No. 8, (July 1, 2001 to June 30, 2003), executed on June 18, 2002 and effective until August 17, 2004. [Exhibit #1, ¶4]. The Personnel Policy Manual requires the promoted employees to serve a 90-day probationary period.

The defendants agree that Sergeants Barbee and Chamberlain violated policies that resulted in a suspension for Barbee and a reprimand for Chamberlain. Filing No. 28, Exs. 14 and 15. However, defendants contend that there is no requirement that the probationary employees be automatically demoted nor is there a prohibition against extending the probationary period. Defendants also admit that shift bids are done on the basis of seniority. Plaintiff had the least seniority, as the date of promotion is the beginning of the seniority date, and she received the last promotion. Filing No. 28, Exs. 4. and 12.

Plaintiff's sole issue in this case is whether the defendants discriminated against her by not giving her the daytime shift position which she says occurred because Sergeants Barbee and Chamberlain did not receive demotions during their probationary status back in early 2002. Although a number of the facts alleged by the plaintiff are irrelevant, in an effort to be complete, the court has configured and summarized the following chronology of events that in one way or another tie into plaintiff's claims:

*1995 - one African-American officer on probation demoted (George Cox)
*1997 - two African-American officers on probation demoted (Willie Blake and Devlin Thompson)
*January/February 2002 - two white officers, Barbee and Chamberlain, promoted to sergeant
*March 6, 2002 - plaintiff is promoted to sergeant
*March/April 2002 - Barbee and Chamberlain disciplined; received additional probationary period, no demotions
*June, 2002 until October, 2003 - plaintiff member of Transition Team and worked the day shift
*June, 2002 - two white officers, Richman and Fleming, demoted during probationary period
*July, 2002 - plaintiff and others file a complaint with the City that Barbee and

        Chamberlain did not receive demotions; complaint denied
*June 2003 - shift bid; Barbee receives shift C; Chamberlain shift B; and plaintiff shift A
*October 2003 - Transition Team ends and plaintiff goes to shift A, pursuant to the July 2003 shift bid
*December 4, 2003, plaintiff files her EEOC charge

Defendants contend that summary judgment should be granted in this case in accordance with Fed. R. Civ. P. 56 for the reasons that: (1) there is no equal protection claim under § 1983 in this case, as there is no policy or custom that resulted in a deprivation of a constitutional right; (2) the filing of the charge with the EEOC did not occur within the 300 day filing time-frame, and, thus, the Title VII claim should be dismissed; and (3) even if the plaintiff timely filed a Title VII claim with the EEOC, the defendants awarded shifts based on seniority which is a legitimate non-discriminatory reason.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the non-existence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if a defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v.*

*Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once a defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the non-moving party, "but in order to defeat a motion for summary judgement, the non-movant party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro*, 247 F.3d 826, 829 (8th Cir. 2001). In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence

or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**DISCUSSION**

*A. Title VII - Administrative Requirements*

Defendants allege that plaintiff failed to file her charge of discrimination within the 180/300 day time limit. 42 U.S.C. § 2000e-(5)(e)(1). If an employee fails to meet this deadline, the claim is barred for failure to exhaust. *Delaware State College V. Ricks*, 449 U.S. 250, 256 (1980). The discriminatory behavior occurred, according to defendants, in March and April of 2002, when defendants allegedly treated discipline issues for whites and African-Americans differently. Plaintiff did not file the claim with the EEOC until December 4, 2003. Filing No. 28, Ex. 21. However, the plaintiff contends that the clock began to run in July of 2003 when she received the night shift status or in October 2003 when she actually began to work the night shift.

The essence of plaintiff's complaint in this case is that denial of her shift preference is the discrimination against her. Although the question is a close one because she must rely on alleged discriminatory behavior that occurred in early to mid-2002, the court finds that the clock began to run in early to mid-2002 when plaintiff believed she had been discriminated against, not July or October 2003 when the alleged discrimination caused her harm. Her knowledge of this alleged discrimination is evidenced by the fact that the plaintiff received assistance in July 2002 from the African American Correctional Officers Association who helped her and others file a complaint with the Douglas County Personnel Director alleging that Barbee and Chamberlain's discipline should have resulted in

6

demotions. Filing No. 28, Exs. 8 and 9. The time for filing the charge with the EEOC begins to run from the date of the discriminatory act, not the date at which plaintiff believes the consequences are harmful to her. *Ricks*, 449 U.S. at 258. The seniority ranking was established in 2002. She believed these actions to be discriminatory at that time in 2002, and this decision is the basis for the discrimination alleged by plaintiff in this lawsuit. The shift preference occurred in July 2003, but the basis of her claim occurred in 2002. Accordingly, the court finds plaintiff's Title VII claim is time barred. However, in the alternative, the court will also address the merits of the motion that is presented to it.

### B.  Title VII - Disparate Practices

Defendants urge that even if plaintiff timely filed the EEOC claim, the plaintiff cannot set forth a claim upon which relief can be granted. Defendants contend that the plaintiff has failed to state a cause of action under the provisions of Title VII, because she cannot establish any evidence of an intent to discriminate on the part of defendants under the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972).

A prima facie case of discrimination requires the plaintiff to establish that she 1) is a member of a protected class; 2) was qualified to perform her job; 3) suffered an adverse employment action; and 4) was treated differently than similarly situated people. *See Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (*citing Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993). If the employer succeeds in this burden of production, then the burden shifts

back to the plaintiff to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). The ultimate burden of persuasion remains with the plaintiff throughout the case.

### 1. Prima Facie Case

The defendants concede that plaintiff is a member of a protected class and that she performed her job satisfactorily. However, defendants contend that plaintiff did not suffer an adverse employment action under Title VII that resulted from discrimination. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Missouri Dep't of Corrs. & Human Servs.*, 210 F.3d 850 (8th Cir. 2000); *see also Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 380 (8th Cir. 1994) (employee's transfer to different department not sufficient to constitute adverse action). Plaintiff contends that she had to pay more for daycare, could not attend her daughter's games, had to seek professional help to sleep, and received inmate threats on the night-shift. According to the defendants, plaintiff received her preferred shift assignment beginning July 25, 2004. Therefore, apparently the only dispute is during the time period between October, 2003, and July, 2004.

Plaintiff contends that Sergeant Chamberlain's selection of the B shift kept her from receiving the B shift. The defendants point out that even if Chamberlain had not received the B shift, another officer, Sergeant Curry had more seniority than plaintiff and had requested the B shift. Sergeant Curry did not receive the requested B shift. Had Chamberlain not received it, the shift change would have gone to Sergeant Curry and not to plaintiff. Thus, argues defendants, plaintiff has experienced no adverse actions in any event. Plaintiff argues that had Chamberlain and Barbee each been demoted, both she

8

and Curry would have received their requested shifts. The court finds this not be true. Sergeant Barbee's status made no difference, because he received the C shift, which plaintiff did not request. Curry would have received the shift requested by plaintiff had Chamberlain not been in the picture.

Plaintiff argues that the civil service policy requires an employee to be demoted for misconduct. Filing No. 27, Ex. 5. The relevant language states that if the employer is not satisfied with the performance of the employee, the employee will be reinstated to his former position. *Id.* The court has reviewed the civil service policies. There is absolutely no language in the civil service policies that requires an employee to be demoted when he or she violates a rule or procedure. Plaintiff's reading of Exhibit 5 in this manner is without merit, and the language in Exhibit 5 does not support plaintiff's assertion.

Even if somehow the court construed plaintiff's failure to receive shift B as an adverse employment action for purposes of this motion, the plaintiff has failed to meet her burden of showing that defendants treated her differently than others who were similarly situated. In order to make this argument, plaintiff contends that three other African-American employees, George Cox, Willie Blake and Devlin Thompson,[1] were treated differently than white employees. The demotions of three correctional officers approximately five years before this lawsuit are not relevant to plaintiff's claim that she did not receive her requested shift, particularly since the defendants have offered evidence that two white correctional officers received demotions in 2002 during their probationary status. *See* Filing No. 28, Exs. 16, 17 and 18. This has no relationship to plaintiff's claim

---

[1] These three employees were demoted during their probationary periods which occurred in 1995 and 1997.

9

of discrimination. Accordingly, for the reasons set forth herein, the court finds that plaintiff has failed to make a prima facie case of racial discrimination in this case.

### 2. Reason for Actions

Even if plaintiff had made her prima facie case of racial discrimination, defendants have produced evidence of a legitimate non-discriminatory reason for their actions. Defendants contend that both of the white officers were disciplined based on their respective rules violations as were the African-American employees who were demoted five years before the actions involving Barbee and Chamberlain. Further, two of the instances were under different administrations and the conduct by each employee was different. Sheriff Dunning testified that the rule violations by Blake, Thompson and Cox were much worse than those committed by Barbee and Chamberlain. Ex. #3, ¶ 12. Also, two white officers, Richman and Fleming, were also demoted in 2002 for rule violations which occurred while serving their probations. Ex. 3, ¶¶ 13 and 14. The courts will not sit as "super-personnel departments reviewing wisdom or fairness" of employer's judgments unless they were intentionally discriminatory. *Edmund v. MidAmerica Energy Co.*, 299 F.3d 679, 686 (8th Cir. 2002). The defendants have met their burden of establishing nondiscriminatory reasons for their actions.

### 3. Pretext

The burden now shifts to the plaintiff to show that defendants' proffered reasons are pretextual in nature. Plaintiff has not offered a single reason supported by appropriate evidence that shows the defendants' shift decision was based on discriminatory reasons. Plaintiff offers no evidence to show that the proffered reasons were pretextual and, thus, the burden rests with the plaintiff. *St. Mary's Honor Ctr.*, 509 U.S. at 512.

Accordingly, for all the reasons set forth herein, the court finds that the Title VII action should be dismissed and summary judgment granted. There are no material facts at issue that could be submitted to a jury.

### C.   § 1983 Cause of Action

Plaintiff contends that defendants violated her rights pursuant to 42 U.S.C. § 1983. To make a claim under § 1983, the plaintiff must show that the alleged wrongful act deprived her of a constitutionally protected federal right. *Springdale Edu. Assoc. v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). In order to hold the defendants liable under §1983, the plaintiff must establish the existence of a county policy, practice or custom that caused or was the moving force behind her alleged constitutional deprivation. *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). To be successful, the plaintiff must show:

> (1) The existence of a continuing widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e. that the custom was the moving force behind the constitutional violation.

*Springdale Education Assoc.*, 133 F.3d at 653. Plaintiff argues that the defendants discriminated against other African-American probationary officers, who were similarly situated, which resulted in plaintiff not moving up faster on the preferred shift list. Plaintiff argues that this discrimination results from a policy, practice and/or custom. However, the only testimony in this regard is by John Taylor, Director of Personnel, who, in his affidavit, swears there is no policy or rule that prohibits extending probation or one requiring

11

demotions for violations that occur while on probation. Ex. #1, ¶¶ 11 and 12.  Plaintiff appears to be alleging that she has been denied her equal protection rights under the Fourteenth Amendment because she did not receive her shift request and the decision by the defendants to not give her the requested shift was based on race.  The court has already concluded that plaintiff failed to make a prima facie case of racial discrimination and makes the same findings with respect to the § 1983 cause of action. The court further concludes that no evidence of a policy or custom has been presented by the plaintiff to the court which would support a cause of action on this claim.  Accordingly, the court finds that summary judgment should be granted as to the § 1983 claim.

**CONCLUSION**

The court finds that plaintiff arguably filed her EEOC charge in excess of 300 days of her claim of discrimination.   However, even if the court construed the claim as timely, she has not met her burden in any event.   Under Title VII, plaintiff has failed to make a showing that she has been adversely affected by intentional discrimination.  The fact that she believes probationary correctional officers should be demoted whenever disciplined is not supported in the policies and procedures of the county nor is any evidence before this court to support such an argument.   She has made no preliminary showing that correctional officers on probation were demoted or not demoted on the basis of race.  On the contrary, the evidence before the court, even if relevant, shows that both white and African-American employees received demotions and/or retained probationary status following disciplinary measures.  The defendants have offered valid reasons for their disciplinary distinctions and have offered a non-discriminatory reason for how they choose what shift an employee will work.  Further, defendants have presented evidence that no

12

matter what the scenario, plaintiff would not have received the shift she desired, even if both of the white correctional officers had been demoted.  She has offered no evidence of pretext.   With regard to her § 1983 claim, the court likewise finds it to be without merit for the same reasons.   There is no custom or policy that has been presented to this court to support plaintiff's claims.  There is no evidence of intentional racial discrimination that would support plaintiff's equal protection claim.  The court finds this case to be without merit and will grant the defendants' motion for summary judgment.

THEREFORE, IT IS ORDERED THAT defendants' motion for summary judgment, Filing No.26, is granted.  A separate judgment shall be entered in conjunction with this memorandum and order.

DATED this 28th day of March, 2006.

BY THE COURT:


s/Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge